15-1154

# United States Court of Appeals
## for the
## Tenth Circuit

◆—▸◖◗◂—◆

BWP MEDIA USA, INC. d/b/a Pacific Coast News;
NATIONAL PHOTO GROUP, LLC,

*Plaintiffs-Appellants,*

– v. –

CLARITY DIGITAL GROUP, LLC n/k/a
AXS DIGITAL MEDIA GROUP, LLC,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO (DENVER)
THE HONORABLE PHILIP A. BRIMMER
D.C. NO. 1:14-CV-00467-PAB-KMT

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

SANDERS LAW, PLLC
*Attorneys for Plaintiffs-Appellants*
100 Garden City Plaza, Suite 500
Garden City, New York 11530
(516) 203-7600

Dated:  November 16, 2015

**ORAL ARGUMENT REQUESTED**
**SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................I

TABLE OF AUTHORITIES ....................................................II

INTRODUCTION ...................................................................1

SUMMARY OF THE REPLY ...................................................1

ARGUMENT .........................................................................3

  I. DEFENDANT'S ARGUMENT ILLUSTRATES WHY THE DISTRICT COURT ERRED IN HOLDING THAT THE TERM USER SHOULD BE AFFORDED ITS ORDINARY, DICTIONARY DEFINITION FOR PURPOSES OF INTERPRETING THE LANGUAGE OF 17 U.S.C. §512(c).6

    A. Defendant's Argument Is Legally And Logically Flawed............................7

    B. The Definition Of User Provided By Defendant Is Not Consistent With The Rules Of Statutory Construction Regarding Immunities From Liability......15

    C. The Definition Of User Provided By Defendant Is Not Consistent With The General Rules Of Statutory Construction........................................17

    D. Defendant's Reliance On Cases Decided Under The Communications Decency Act Do Not Support Its Conclusion..............................................19

  II. PLAINTIFFS' ARGUMENTS REGARDING DEFENDANT'S WILLFUL BLINDNESS AND/OR ACTUAL KNOWLEDGE WERE DULY RAISED IN THE COURT BELOW AND ARE RELEVANT TO THIS APPEAL....21

    A. Examiners Are Agents of Defendant .........................................22

    B. The Existence Of An Agency Relationship Necessarily Affects Defendant's Eligibility For The DMCA Safe Harbor.......................................24

    C. The Disclaimer In The Examiners' Agreement Does Not Operate To Insulate Defendant As A Matter Of Law ......................................24

CONCLUSION ......................................................................29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)................................30

I

# TABLE OF AUTHORITIES

## Cases

*ALS Scan, Inc. v. RemarQ Communities, Inc.*,
   239 F.3d 619 (4th Cir. 2001) ..................................................16

*Anderson v. Adam's Mark Hotels & Resorts*,
   211 F.3d 1277 (10th Cir. 2002) ........................ 24, 25, 26, 27

*Ashland Facility Operations, LLC v. Nat'l Labor Relations Bd.*,
   701 F.3d 983 (4th Cir. 2012) ..................................................23

*Burlington Industries, Inc. v. Ellerth*,
   524 U.S. 742 (1998)..................................................................26

*Capitol Records, Inc. v. MP3tunes, LLC*,
   821 F.Supp.2d 627 (S.D.N.Y. 2011) ............................. 15, 16

*Capitol Records, LLC v. Escape Media Group, Inc.*,
   2015 WL 1402049 (S.D.N.Y. 2015).....................................15

*Capitol Records, LLC v. Vimeo, LLC*,
   2013 WL 5272932 (S.D.N.Y. 2013).....................................16

*Chapman v. Duke Energy Carolinas, LLC*,
   2009 WL 1652463 (W.D.N.C. 2009) ...................................17

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ..............................................16

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989)..................................................................23

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*,
   447 U.S. 102 (1980)..................................................................18

*CoStar Group, Inc., v. Loopnet, Inc.*,
   373 F.3d 544 (4th Cir. 2004). ...............................................27

*Disabled in Action of Pennsylvania v. Southeastern Pennsylvania
   Transp. Authority*,
   539 F.3d 199 (3d Cir. 2008) ..................................................17

*Donaca v. Dish Network, LLC*,
 303 F.R.D. 390 (D.Colo. 2014) ........................................................................28

*Espinal-Andrades v. Holder*,
 777 F.3d 163 (4th Cir. 2015) ..........................................................................18

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) ........................................................................20

*Fame Publ'g Co. v. Ala. Custom Tape, Inc*.,
 507 F.2d 667 (5th Cir. 1975) ..........................................................................15

Heppner v. Alyeska Pipeline Service Co.,
 665 F.2d 868 (9th Cir. 1981) ..........................................................................18

*I.N.S. v. Cardoza-Fonzeca*,
 480 U.S. 421 (1987)..........................................................................................18

*Lopez–Soto v. Hawayek*,
 175 F.3d 170 (1st Cir. 1999) ..........................................................................18

*Rosenberg v. XM Ventures*,
 274 F.3d 137 (3d Cir. 2001) ...........................................................................17

*Tello v. McMahon*,
 677 F.Supp. 1436 (E.D. Ca. 1998) .................................................................18

*Thomas v. Metropolitan Life Ins. Co*.,
 631 F.3d 1153 (10th Cir. 2011) ......................................................................18

*UMG Recordings, Inc. v. Veoh Networks, Inc.,*
 620 F.Supp.2d 1081 (C.D. Ca. 2008) .............................................................13

*United States v. James*,
 478 U.S. 597 (1986)..........................................................................................18

*United States v. Texas*,
 507 U.S. 529 (1993)..........................................................................................15

*Watt v. Alaska*,
 451 U.S. 259 (1981)..........................................................................................18

*Wood v. Houghton Mifflin Harcourt Pub. Co.*,
  589 F.Supp.2d 1230 (D. Colo. 2008)....................................................................27

## Statutes

17 U.S.C.
  §512(c) ............................................................................................ *passim*
  §512(c)(1)......................................................................................... *passim*
  §512(c)(1)(A)(i) ............................................................................. 5, 9, 24
  §512(c)(1)(A)(ii) ..............................................................................................24


47 U.S.C.
  §230 ..............................................................................................................20
  §230(c)..........................................................................................................20

## Other Authorities

H.R. Rep. 105–551(II), at 21 ...............................................................................13
S. Rep. No. 105-190 at 43 (1998) ............................................................. 13, 15, 19

## Treatises

Restatement (Third) of Agency  (2006)
  § 2.01.............................................................................................................23
  § 2.03............................................................................................................. 23, 28

## INTRODUCTION

Plaintiffs BWP MEDIA USA, INC. d/b/a Pacific Coast News and NATIONAL PHOTO GROUP, LLC ("Plaintiffs") respectfully submit this Reply Statement to the Answering Brief of Defendant CLARITY DIGITAL GROUP, LLC n/k/a AXS DIGITAL MEDIA GROUP, LLC ("Defendant").

## SUMMARY OF THE REPLY

It is axiomatic that: (i) the DMCA is intended to apply to true third-party user conduct; and (ii) the DMCA does not apply to Internet Service Provider ("ISP") employee and owner conduct. The question before this Court is *how* this "exclusion" from the safe-harbor occurs. Defendant argues that the relevant inquiry to determine if the DMCA safe-harbor protections apply is whether the infringing material was stored "at the direction of a user or at the direction of the defendant." Defendant seems to find solace in and dedicates the majority of its brief to the phrase "at the direction of," arguing that, as used in the statute, such words distinguish the conduct of a defendant from the conduct of everyone else. Thus, according to Defendant, *if* the infringing material is posted at the direction of a "user," *then* the safe-harbor protections undoubtedly apply, however, *if* the infringing material is posted at the direction of a defendant, *then* the safe-harbor protections do not necessarily apply.

1

Simultaneously, however, Defendant is also heard to argue that a "user" is one who uses (i.e., *anyone* and *everyone*). These dual characterizations are obviously incompatible in that Defendant cannot state both that the safe-harbor does not apply because the infringement material was posted at the direction of a user and at the same time claim that anyone, including Defendant, may be defined as a "user."

Further, these interpretations draw no support from the words of the statute itself.  The statute is not conditional, rather, it simply says it applies to infringements stored "at the direction of a user."  Therefore, by phrasing the question in the manner it does, Defendant is either intentionally or unintentionally installing its own definition of "user" to draw their stated distinction and thus produce the necessary outcome of excluding owner/employee conduct.

However, as will be explained more fully herein, Defendant's statutory construction does not work and results in a circular argument with meaningless distinctions.  It falls upon this Court to determine the statutory mechanism by which the known DMCA exclusion is occurring, and thereafter determine whether this Defendant's conduct fall within that exclusion.

# **ARGUMENT**

Plaintiffs ask this Court, *inter alia,* to find that the District Court erred in holding that the term "user" should be afforded its ordinary, dictionary definition within the meaning of 17 U.S.C. §512(c), and in finding that Defendant's Examiners are "users" under the statute.  The District Court held that the term "user" is defined as "one who uses" for purposes of applying the statute.  In support of their argument, Plaintiffs have submitted that the District Court's holding was error, insofar as it cannot be reconciled with the case law which has found that an ISP cannot claim DMCA immunity for online content generated by officers, employees and/or agents[1], who would also be "users" under the District Court's definition.

While Defendant's answering brief goes to great lengths to obfuscate the issues and discuss facts not relevant to this appeal, it actually serves to underscore Plaintiffs' argument and provides an illustration of why the District Court's decision was wrong.  The reason that both the District Court and Defendant are wrong is revealed by the structure and premise of Defendant's reasons for affirmance.

In urging this Court to affirm, Defendant avers that the District Court acted correctly in granting its motion for summary judgment, by finding that the term

---

[1] Citations in Plaintiffs' opening brief at Argument, Point "C".

"user" refers to anyone who utilizes a website's functions. Aplee. Br. at p. 9. Defendant then contends that the District Court properly found that the DMCA safe harbor protection does not extend to all user uploaded content, but only to content uploaded *at the direction of a user.* Id.

As will be discussed more fully herein, the problem with Defendant's argument is that under the District Court's holding, Defendant recognizes that a "user" becomes "any visitor to the site, [as well as] any employee, owner or other individual [who] "used" the site." Aplee. Br. at p. 15. Stated otherwise, under the District Court's holding, a "user" is *anyone.* It therefore follows that applying such definition to the query posited by Defendant and the District Court would yield a distinction without a difference because, if a user is anyone, the answer to the question of whether the content was uploaded *at the direction of a user* would always be 'yes.'[2] This cannot be.

What both Defendant and the District Court are missing is that the term "user" *must* have an independent meaning for purposes of applying 17 U.S.C. §512(c), otherwise, the statute loses all significance. Specifically, Section 512(c) provides a limitation on liability to an ISP for *user generated content,* if certain additional criteria are met. If a "user" is defined as *anyone* – including any employee or owner of a defendant – then it would necessarily follow that *all*

---

[2] Even automatically generated content would be as a result of human programming and would therefore be at the direction of a user.

content on *any* website would *always* be user generated.  This cannot be the proper result because that is not what the statute says.  Section 512(c) provides a carve-out from copyright liability user generated content, not for *all* content.

It is therefore submitted that the threshold inquiry to determine if Section 512(c) applies is to ask whether the content was "user generated."  If a "user" is anyone, as proffered by Defendant and held by the District Court, then there is no metric by which to decide if Section 512(c) applies at all; it would universally apply to all content on a website.  Plaintiffs respectfully submit that the term "user" *must* be a legal term of art under 17 U.S.C. §512(c) since the intention of the Legislature, as discussed *infra*, was far more limited and balanced in orientation.

In addition, Defendant's argument is logically flawed, to the extent that it acknowledges – as it must – that an ISP cannot invoke the safe harbor protection under 17 U.S.C. §512(c) for content generated by employees.  Aplee. Br. at p. 28.  Although Defendant makes this a focal point of its request for affirmance, Defendant does not tell us why this is true.

Plaintiffs submit that the answer must be found in within the definition of the word "user" in 17 U.S.C. §512(c)(1), as only Subsection (c)(1) can determine if Section 512(c) even applies.  Only after that determination is made, can one look to the "knowledge" element of 17 U.S.C. §512(c)(1)(A)(i) and/or (A)(ii) to see if there is an exception to the exception.  Because the interpretation urged by

Defendant under the District Court's holding would yield an illogical, if not impossible result, Defendant's argument must be rejected and this Court must reverse.

### I.  DEFENDANT'S ARGUMENT ILLUSTRATES WHY THE DISTRICT COURT ERRED IN HOLDING THAT THE TERM USER SHOULD BE AFFORDED ITS ORDINARY, DICTIONARY DEFINITION FOR PURPOSES OF INTERPRETING THE LANGUAGE OF 17 U.S.C. §512(c)

In its answering brief, Defendant admits that a website operator's eligibility for the safe harbor protections offered under 17 U.S.C. §512(c) depends on the nature of the relationship between the defendant and the person(s) uploading the infringing content.  In fact, Defendant contends it cannot be liable to Plaintiffs for the conduct of its Examiners because "**no AXS Digital employee or officer was aware of the posting of the BWP photos at issue prior to being so notified by BWP's counsel**."  Aplee. Br. at p. 6-7 (emphasis by Defendant).  This theme is repeated throughout Defendant's answering brief.  *See, e.g.,* Aplee. Br. at pp. 3, 5, 13-14, 17, 19, 28-29, 35, 43-44.

Unfortunately, Defendant does not (or cannot) logically explain its reasoning for this distinction under the District Court's decision.  In fact, upon further examination, Defendant's argument serves to illustrate why both it and the District Court are wrong.

6

## A. Defendant's Argument Is Legally And Logically Flawed

To understand why the conduct of owners, officers, employees and/or agents (and, in this case, Defendant's Examiners) is (or should be) exempt from the liability limitation, Plaintiffs submit that the logical starting point is to analyze the language of the statute itself.  The statute reads as follows:

> (c) Information residing on systems or networks at direction of users.--
>
> > (1) **In general**.--A service provider shall not be liable for monetary relief …. for infringement of copyright by reason of the storage at the direction of a user …  if the service provider--
> >
> > > (A)(i) does not have actual knowledge that the material… is infringing;
> > >
> > > (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or …
> >
> > > (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; …

17 U.S.C. §512(c).

In reading the statute, if the Court applies the definition of the word "user" urged by Defendant, it will find that there are no words in the statute itself to explain why a website operator would be immune from liability for content stored by a third-party who used the website software to upload infringing material, but would remain liable for content stored by an employee of the website who used the website software to upload the same infringing material.  This is because both

groups of people would be "users" under the District Court's definition, as the employees and third-parties both "used" the website to upload content.

Critically, although the distinction does not appear on the face of the statute, as interpreted by Defendant and the District Court, Defendant nonetheless admits that such a distinction exists. Since Defendant has not (or cannot) cite to its authority, we are required to probe further.

As was noted above, Plaintiffs submit that the answer must first be found in within the definition of the word "user" at 17 U.S.C. §512(c)(1)[3]. If Plaintiffs are correct, and it exists within the definition of the word "user" then, as the District Court noted, no court has yet been called upon to provide that explanation. As Plaintiffs stated in their opening brief, the simplest way to do this would be to offer a clear definition of the term "user." If the definition were to exclude owners, officers, employees, paid contributors and/or contract writers, such as Examiners, there would be a bright-line rule which would be readily discernable for all to follow. Alternatively, as discussed more fully in Points I.C and II, *infra,* if the

---

[3] To the extent that Defendant believes that the answer to this question can be found in the "knowledge" element of Subsections (c)(1)(A)(i) and/or (A)(ii), Plaintiffs submit that Defendant is wrong. Specifically, Plaintiffs submit that Section 512(c) contains a two-part inquiry. First, it must be determined whether the content at issue is user generated. Only if the answer to that question is "yes," then, can one proceed to Subsections (c)(1)(A)(i) and/or (A)(ii) to determine if the knowledge element operates as an exception to the exception. Because this issue is more a question of statutory construction, however, Plaintiffs incorporate the argument advanced in Point I.C *infra* to this point.

immunity flows from the "knowledge" element of 17 U.S.C. §512(c)(1)(A)(i) and/or (A)(ii), then courts can look to the common law to set forth those relationships by which knowledge or conduct may be imputed from a "user" to the putative defendant.

Defendant disagrees with both of Plaintiffs' arguments and, instead, avers that the distinction is found in the words "at the direction of" in 17 U.S.C. §512(c)(1). Specifically, Defendant posits that:

> "The actual threshold question that determines whether a website owner may invoke the DMCA's safe harbor is whether the infringing material at issue was stored on the defendant's computer server 'at the direction of' a user (in which case the DMCA safe harbor *may* be available), or whether the information came to reside on its server "at the direction of" the defendant (in which case the DMCA safe harbor is <u>not</u> available)."

Aplee. Br. at 17 (italics by Defendant, underline by Plaintiffs).

Defendant's argument is flawed for a number of reasons.

First and foremost, the statute does not ask the question in the manner suggested by Defendant. Specifically, the statute only asks whether the infringing content was stored "at the direction of a user" and does not include the "at the direction of the defendant" comparison clause. Accordingly, by phrasing the question in the way it does, Defendant acknowledges that the statute is ambiguous and judicial interpretation is required.

The same is true with respect to Defendant's focus on the words "at the direction of." These four words do not operate to modify or change the meaning of any other words used in the statute (most notably, the word "user"). The fact that Defendant makes this argument, however, supports the position advanced by Plaintiffs. Specifically, by acknowledging that the phrase "*at the direction of* a user" operates to exclude the conduct of a defendant (or website operator), Defendant is making a tacit admission that Section 512(c)(1) operates as a gate-keeping function to determine if that exception is even in play.

To illustrate the lack of substance in Defendant's argument, one need only substitute the District Court's definition of the word "user" into Defendant's proffered "threshold question" to find that it is redundant, at best. Specifically, if one substitutes the District Court's definition into Defendant's threshold question, it would read as follows:

> "The actual threshold question … is whether the infringing material at issue was stored on the defendant's computer server 'at the direction of' [one who uses the website] … or whether the information came to reside on its server "at the direction of" the defendant …"

Aplee. Br. at 17.

As the Court can see, any distinction that Defendant believes to exist between the word "user" and the word "defendant" becomes far more obtuse if the District Court's definition is applied. Defendant apparently recognizes this

10

problem, because it does not rest at this point. Instead, Defendant attempts to clarify its argument further. Unfortunately for Defendant, in the process of endeavoring to explain its reasoning, Defendant illustrates that the word "user" would actually be *synonymous* with the word "defendant" if the Court were to adopt the definition given by the District Court. This can readily be seen in the answering brief wherein Defendant argues:

> "The District Court properly construed the DMCA's text, finding that the term 'user' did not have any specialized, technical or legal definition … and has been repeatedly interpreted to apply to anyone – whether a defendant's owner, principal, or employee – *who makes use of* the computer system on which information is posted. Thus, under the plain and ordinary meaning of the term 'user,' anyone who posts information to the Examiner.com website is thereby a 'user' of the website's functionality…"

Aplee. Br. at pp. 16-17.

If Defendant's argument is correct (which it is not) and one applies the definition of the word "user" set forth above, Defendant's threshold question would read as follows:

> "The … threshold question is … whether the infringing material at issue was stored on the defendant's computer server at the direction of a [defendant's owner, principal, or employee] … or whether the information came to reside on its server at the direction of the defendant"

As can be seen from the above word substitutions, Defendant's argument becomes more absurd with each reading. Indeed, by asking the "threshold question" with the definition supplied by Defendant, *any* distinction between the

words "user" and "defendant" is completely lost.  Instead, Defendant's threshold question to test liability under the statute becomes 'whether the infringing material was stored by a [defendant] or a defendant?'  As a result, it would not matter if the Court were to put Defendant's four magic words in front of this question, as the phrase "at the direction of" would do nothing to change the interpretation.

In light of the foregoing, Defendant's argument is legally and logically (and, therefore, fatally) flawed.  Further, it serves to illustrate one of the exact points that Plaintiffs present to this Court on appeal.  Specifically, if 'storage at the direction of defendant' (or at the direction of Examiners) is subsumed into the superset of 'storage at the direction of a user' (read "anyone"), then, Defendant's construction of Section 512(c) would operate to offer absolute immunity to all content stored or displayed on any website *a fortiori* by reason of it having come to be stored on a computer by the act of any natural person, subject only to the criteria under Subsections (c)(1)(A), (c)(1)(B), (c)(2) and (c)(3).

Creating an absolute immunity as a starting point was clearly not Congress' intent.  Indeed, Defendant acknowledges as much by citation to the Legislative History accompanying the DMCA which clarified that

> "information that resides on the system or network operated by or for the service provider *through its own acts or decisions* and therefore *not at the direction of a user* does not fall within the liability limitation of subsection (c)."

Aplee Br. at FN9, quoting S. Rep. No. 105-190 at 43 (1998) (internal quotations and brackets omitted) (emphasis by Defendant).

Defendant cannot and does not explain how its construction of Section 512(c) *supra* can coexist with the Legislative History and, in fact, it does not. To the contrary, the construction offered by Defendant flies directly in the face of the Legislative purpose, which was meant to "appropriately balance[ ] the interests of content owners, on-line and other service providers..." *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 620 F.Supp.2d 1081, 1090 (C.D. Ca. 2008) citing H.R. Rep. 105–551(II), at 21.

Under Defendant's construction, there would be no balance between content owners and ISPs. Instead, under Defendant's construction, ISPs would enjoy absolute immunity for any content that came to be stored on a website as a result of the acts of any natural person.

Finally, Defendant's construction cannot be adopted because it provides no guidance as to how courts would differentiate between the acts of a "user" and the acts of a defendant under the statute (assuming that one even exists under Defendant's reasoning). In contrast, Plaintiffs suggest readily identifiable criteria by which such distinction could easily be drawn (such as payment, control, contract, express license, heightened website-related authority, etc.). This would

greatly aid in determining whether content is "user-generated" for purposes of determining whether Section 512(c) even applies.

As it relates to payment, notably, while Defendant contends in its answering brief that it purportedly derived no revenues that are directly attributable to any of Plaintiffs' photographs (Aplee. Br. at p. 12) the undisputed evidence showed that it paid the subject Examiners at issue a total of $415,907.56 during the relevant time for the articles/photographs at issue in this case based on the website traffic generated for Defendant from this content.    A-286.    Defendant avers that Examiners can receive compensation simply by posting an article at least one article a month.    Aplee. Br. at p. 12.    Since the amount of payment to the Examiners is clearly tied to the traffic generated, assuming *arguendo* that Defendant's contention is true, and without debating the point, then it may be said that Defendant is simply paying Examiners for the act of posting content to the Website and keeping the Website current.    If that is the case, it would be disingenuous and inequitable for Defendant to disclaim liability for content that it actively solicited from paid writers who are compensated merely for the act of contributing content to the Website.

For all the reasons explained by Defendant, Plaintiffs respectfully submit that the District Court erred in holding that the term "user" for purposes of applying 17 U.S.C. §512(c) means "one who uses."  Instead, Plaintiffs respectfully

submit that the term "user" was intended by Congress to be a legal term of art within the meaning of Section 512(c). If it is not, then Section 512(c) would be a factor to consider in *every* online infringement case. That was undoubtedly not Congress' intention[4].

### B. The Definition Of User Provided By Defendant Is Not Consistent With The Rules Of Statutory Construction Regarding Immunities From Liability

As was stated in Plaintiffs' opening brief, "the DMCA's safe harbors, as with all immunities from liability[,] should be narrowly construed." *Capitol Records, LLC v. Escape Media Group, Inc*., 2015 WL 1402049 at *10 (S.D.N.Y. 2015) quoting *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F.Supp.2d 627, 636 (S.D.N.Y. 2011) ("*MP3tunes*") and citing *United States v. Texas*, 507 U.S. 529 (1993); *Fame Publ'g Co. v. Ala. Custom Tape, Inc*., 507 F.2d 667, 670 (5th Cir. 1975) (statutes that provide exceptions to liability under the Copyright Act should be strictly and narrowly construed, lest the exception destroy, rather than prove, the rule).

In this case, Defendant urges this Court to adopt the most expansive possible reading of the word "user" within the meaning of 17 U.S.C. §512(c). Specifically, and as was noted *supra*, the definition of "user" offered by Defendant would

---

[4] *See* S. Rep. No. 105-190 at 43 (1998), quoted *supra* (information that resides on the system or network operated by or for the service provider *through its own acts or decisions* and therefore *not at the direction of a user* does not fall within the liability limitation of subsection (c)).

include anyone "who makes use of the computer system on which information is posted." Aplee. Br. at pp. 16-17. Clearly this cannot be the case because, as Defendant points out, that definition would include a defendant's owners, principals and/or employees, who Defendant admits are not protected by Section 512(c). *See, e.g.,* Aplee. Br. at pp. 3, 5, 13-14, 17, 19, 28-29, 43-44 (drawing a distinction between the knowledge and actions of employees and the knowledge and actions of others). If Defendant's construction is adopted, it would result in an automatic and improper expansion of the safe harbor protections under 17 U.S.C. §512(c) and provide no clarity for court's in rendering decisions on defendant vs. user conduct.

A "safe harbor is an affirmative defense and thus imposes on the defendant 'the burden of establishing that he meets the statutory requirements.'" *Escape Media*, 2015 WL 1402049 at 45, quoting *Capitol Records, LLC v. Vimeo, LLC*, 2013 WL 5272932, at *6 (S.D.N.Y. 2013) quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1039 (9th Cir. 2013). "As courts have emphasized, '[t]his immunity ... is not presumptive, but granted only to 'innocent' service providers' "and should be "narrowly construed." *Id*., quoting *MP3tunes*, 821 F.Supp.2d at 636 quoting *ALS Scan, Inc. v. RemarQ Communities, Inc*., 239 F.3d 619, 625 (4th Cir. 2001).

If the District Court's decision is correct, it would remove the burden of proving the first element of Section 512(c), *to wit,* that the person(s) who posted the infringing content to the Website is, in fact, a "user."  Because the safe harbor is an affirmative defense and the burden of proof belongs with Defendant, it cannot be eliminated from the statute by judicial fiat.  The District Court's decision does just this, however.

Specifically, if *anyone* using a website is a *user*, then, any online copyright infringement case would begin with shifting the burden to a plaintiff to prove that the person posting the infringing content was *not* a user within the meaning of Section 512(c).  This would be improper as a matter of law.  *See, e.g., Chapman v. Duke Energy Carolinas, LLC*, 2009 WL 1652463 (W.D.N.C. 2009) (plaintiff does not have the burden of disproving affirmative defenses).

Insofar as affirming the District Court's decision would result in a broad, rather than narrow reading of the safe harbor, and because affirming the District Court's decision would result in an improper burden-shift, this Court must reverse.

### C. The Definition Of User Provided By Defendant Is Not Consistent With The General Rules Of Statutory Construction

It is a well-settled maxim that, when interpreting a statute, a court is to assume that "every word in a statute has meaning."  *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority*, 539 F.3d 199, 210 (3d Cir. 2008) citing *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001);

see also *Espinal-Andrades v. Holder*, 777 F.3d 163 (4th Cir. 2015) (same); U.S. v. Ahlers, 305 F.3d 54 (1st Cir. 2002) ("We presume that Congress intended all words and provisions contained within a statute to have meaning and effect, and we will not readily adopt any construction that renders any such words or phrases meaningless, redundant, or superfluous"); *Lopez–Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir. 1999).

In so doing, a court must "also consider [t]he overall object and policy of the statute … and avoid constructions that produce odd or absurd results or that are inconsistent with common sense." *Disabled* citing *United States v. Schneider*, 14 F.3d 876, 879 (3d Cir. 1994); *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454, (1989) (internal quotations omitted).

While the inquiry begins with an examination of the statute itself (*Thomas v. Metropolitan Life Ins. Co*., 631 F.3d 1153 (10th Cir. 2011)), it should also include a review of the legislative history.  *Tello v. McMahon*, 677 F.Supp. 1436, 1441 (E.D. Ca. 1998) citing *Watt v. Alaska*, 451 U.S. 259 (1981); *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868 (9th Cir. 1981); *I.N.S. v. Cardoza-Fonzeca*, 480 U.S. 421, n12 (1987) (we look to the legislative history to determine whether there is a clearly expressed legislative intention contrary to language that otherwise seems clear) citing *United States v. James*, 478 U.S. 597 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102 (1980).

In the case-at-bar, the District Court concluded that the word "user" within the meaning of 17 U.S.C. §512(c)(1) was purportedly clear and means "one that uses." A-295. As was noted above, Defendant very clearly explains how that construction is readily interpreted to include a defendant's owner, principal, or employee. Aplee. Br. at pp. 16-17. Notwithstanding the foregoing, the Legislative History tells us that Congress intended content which is uploaded to a website through a service provider's own acts or decisions to be outside the liability limitation of 17 U.S.C. §512(c). *See, e.g.*, S. Rep. No. 105-190 at 43 (1998). As a result, the definition supplied by the District Court directly contradicts the Legislative History, to the extent that it would automatically include a defendant's owner, principal, or employee. As Congress clearly did not intend the limitation of liability to extend to the conduct of such persons (id.), the definition of "user" supplied by the District Court constitutes an impermissible and improper construction of the statute.

### D. Defendant's Reliance On Cases Decided Under The Communications Decency Act Do Not Support Its Conclusion

In a final attempt to convince this Court that the District Court was correct in finding that a user is "one that uses" for purposes of applying the safe harbor protection under 17 U.S.C. §512(c), Defendant dedicates an inordinate amount of its brief to a discussion of cases decided under the Communications Decency Act ("CDA"). Aplee. Br. at Point I.B.ii. Apparently, Defendant believes this line of

19

cases is relevant, merely because Plaintiffs cited to the holding in *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157 (9th Cir. 2008) ("*Roommates*") (Aplee. Br. at p. 30), a case decided under the CDA.

Defendant is mistaken, however, to the extent that Plaintiffs cited *Roommates* only for the observation that "[t]he Internet is no longer a fragile new means of communication that could easily be smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses."

Fortunately for both Plaintiffs and this Court, we need not distinguish the myriad of CDA cases cited by Defendant on a one-by-one basis. Instead, they may be summarily dismissed with one basic observation. Specifically, while Defendant contends that "the CDA … incorporates the identical term "user," and that courts have repeatedly construed it to include *anyone* who *uses* a website" (Aplee. Br. at p. 30) (internal quotations and italics by Defendant), that is not necessarily an accurate statement. While the word "user" does appear in 47 U.S.C. §230, its use is not "identical" to that of 17 U.S.C. §512(c). Instead, and critically, the "Good Samaritan" exception from liability under the CDA expressly applies to both *providers* and *users*. See 47 U.S.C. §230(c). Consequently, there is no need to distinguish between a user and a provider under the CDA as they are both eligible for exception from liability. That is not the case with 17 U.S.C. §512(c), which

20

provides a limitation on liability to providers, but *only* if the content is uploaded by a user. As a result, it is respectfully submitted that the cases decided under the CDA and relied upon by Defendant are not analogous.

For all these reasons, this Court must reverse the District Court's conclusion that the term "user" means "one who uses" for purposes of applying the safe harbor protection under 17 U.S.C. §512(c). Absent reversal, Defendant's "threshold question" illustrates precisely the type of bizarre result that would flow from an affirmance.

## II. PLAINTIFFS' ARGUMENTS REGARDING DEFENDANT'S WILLFUL BLINDNESS AND/OR ACTUAL KNOWLEDGE WERE DULY RAISED IN THE COURT BELOW AND ARE <u>RELEVANT TO THIS APPEAL</u>

Even if Defendant's Examiners are users within the meaning of 17 U.S.C. §512(c)(1), which Plaintiffs aver they are not, Defendant is nonetheless liable to Plaintiffs for the acts of the Examiners under the common law because Defendant is chargeable with knowledge of the Examiners' acts and conduct.

Although Defendant argues that Plaintiffs waived any argument pertaining to Defendant's actual or "red flag" knowledge of the Infringements by purportedly failing to raise those issues in Plaintiffs' opening brief (*see* Aplee. Br. at FN8), this statement is not correct. To the contrary, in their opening brief, Plaintiffs argued that either an actual or implied agency relationship exists between Defendant and its Examiners. Aplt. Br. at Point F. In that argument, Plaintiffs averred that the

existence of an agency relationship, whether actual or implied, would result in the imputation of the Examiners' knowledge to Defendant.

Defendant is equally mistaken in its contention that Plaintiffs did not raise these issues in the court below and, therefore, are purportedly barred from making this argument 'for the first time' on appeal.  Aplee. Br. at p. 46.  To the contrary, Plaintiffs argued repeatedly to the District Court that Examiners are not "independent third-parties" and that Defendant is chargeable with actual knowledge of the Infringements due to the nature of the relationship between Defendant and its Examiners.  See, e.g., SA-22 at ¶1; SA-28.

Apparently, Defendant seeks an advantage by arguing that Plaintiffs have not cited the portion of the record where these arguments were raised, however, that is solely a result of the fact that the argument was set forth entirely in Plaintiffs' memorandum in opposition to Defendant's motion for summary judgment and, pursuant to Circuit Rule 10.3(E), such briefs are not to be included in the record on appeal unless they have any independent significance.  Here, Plaintiffs' memorandum in opposition had no independent significance and was therefore not included in the record.

## A. Examiners Are Agents of Defendant

On this appeal, as well as in the court below, Plaintiffs argued that an agency relationship exists between Defendant and its Examiners.  As was noted in

Plaintiffs' opening brief, in the context of a copyright case, the Supreme Court has held that courts are to look to the general common law of agency, rather than to the law of any given state, to be consistent with the objective of having the Copyright Act be uniform. *See, e.g., Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 741 (1989).

Under the common law, "[a]n agency relationship can be actual or apparent." *U.S. v. Kolon Industries, Inc.,* 926 F.Supp.2d 794, 810 (E.D. Va. 2013). "Actual agency exists when, at the time of taking action that has legal consequences for the principal, the agent reasonably believed in accordance the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* quoting *Ashland Facility Operations, LLC v. Nat'l Labor Relations Bd.,* 701 F.3d 983, 990 (4th Cir. 2012) quoting Restatement (Third) of Agency § 2.01 (2006) (internal quotations omitted). "Apparent authority arises where a third-party reasonably believes that the putative agent has the authority to bind the principal." *Id.* citing Restatement (Third) of Agency § 2.03 (2006).

In this case, it has been argued – both here and in the Court below – that there are grounds to find either an actual or apparent agency relationship between Defendant and its Examiners[5].

---

[5] Plaintiffs refer the Court to Point F of their opening brief for a discussion of the factors that warrant finding the existence of an agency relationship between Defendant and its Examiners.

### B. The Existence Of An Agency Relationship Necessarily Affects Defendant's Eligibility For The DMCA Safe Harbor

As was noted earlier, once it is determined that infringing content hosted on a website was uploaded at the direction of a user, an ISP will not qualify for the safe harbor under 17 U.S.C. §512(c)(1) if it has actual or "red flag" knowledge of the infringements.  See 17 U.S.C. §§512(c)(1)(A)(i), (A)(ii).  As was argued extensively in Plaintiffs' opening brief, if an agency relationship is found to exist between Defendant and its Examiners, the result would be that the Examiners' knowledge and/or actions would be imputed to Defendant.  Therefore, even if the Examiners are found to be users for purposes of Section 512(c), Defendant would not qualify for the safe harbor protection by reason of the knowledge imputed to it under the principles of agency law[6].

### C. The Disclaimer In The Examiners' Agreement Does Not Operate To Insulate Defendant As A Matter Of Law

In a final effort to avoid liability to Plaintiffs for the Infringements posted to the Website by its Examiners, Defendant argues that it cannot be held liable under the principles of agency law because the Examiner Agreement purportedly prohibits Examiners from uploading copyrighted content without license or permission from the copyright owner.  Aplee. Br. at pp. 10-11.  In support of this argument, Defendant relies on this Court's holding in the case of *Anderson v.*

---

[6] Plaintiffs refer the Court to Point F of their opening brief and, specifically, to FN11 therein, for a discussion of the significance of an agency relationship.

*Adam's Mark Hotels & Resorts,* 211 F.3d 1277 (Table), 2000 WL 390107 (10th Cir. 2002) ("*Anderson*").  Defendant cites *Anderson* for the premise that, under purportedly similar circumstances, "a master is not subject to liability for the torts of his servant under the Restatement [Second] of Agency.  Aplee. Br. at p. 52.

Defendant's reliance on *Anderson* for the proposition stated is completely misguided, as the facts in *Anderson* are not analogous and, more importantly, Defendant misquotes this Court.

In *Anderson*, the plaintiff filed suit against defendant Adam's Mark Hotels & Resorts (where she was employed as a bartender) after she was sexually assaulted by one of defendant's other employees, who worked as manager of the hotel's night club.  The assault occurred on the premises owned by the defendant hotel.  The district court dismissed the complaint as against the hotel finding, *inter alia,* that alleged assault did not occur while plaintiff or the assailant were at work, and the events leading up to the assault were not work-related.  The district court also found that the defendant hotel had no duty to supervise the assailant during his off-duty time.

On appeal, although this Court affirmed the dismissal as against the hotel, it nonetheless recognized:

> "the Supreme Court has stated: 'In limited circumstances, agency
> principles impose liability on employers even where employees
> commit torts outside the scope of employment. The principles

are set forth in the much cited § 219(2) of the Restatement [(Second) of Agency]:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
>> (a) the master intended the conduct or the consequences, or
>>
>> (b) the master was negligent or reckless, or
>>
>> (c) the conduct violated a non-delegable duty of the master, or
>>
>> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.'"

*Anderson*, 2000 WL 390107 at *2, citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758 (1998).

As can be seen from the above, this Court's decision in *Anderson* illustrates when an employer will *remain* liable for the torts of its employees, even if they are acting outside the scope of their employment.

To the first point, we should not even get to the questions raised in *Anderson*, because the Examiners were not acting outside the scope of their employment. To the contrary, they were doing exactly that which is required of them under the Examiner Agreement – posting content to the Website. As a result, Defendant's argument is not clear. To the extent that Defendant is suggesting that the Examiners were acting outside the scope of their employment when they posted Plaintiffs' copyright protected photographs to the Website, Defendant

would be wrong.  Indeed, as the Hon. David M. Ebel observed, "the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights."  *Wood v. Houghton Mifflin Harcourt Pub. Co*., 589 F.Supp.2d 1230, 1243 (D. Colo. 2008) citing *CoStar Group, Inc., v. Loopnet, Inc*., 373 F.3d 544, 549 (4th Cir. 2004).  Instead, all that is required is that the infringer intend to use the photograph(s).  *See id.*  As a result, as long as Defendant wanted its Examiners to post photographs to the Website, then the Examiners were working within the scope of their employment at the time they engaged in the infringing conduct.

Now turning to the *Anderson* exceptions, those instances include when "the master intended the conduct" and/or "the servant purported to act or to speak on behalf of the principal."  Both of those conditions are met here.

As to the first issue, it is clear that Defendant intended the conduct complained of, *to wit,* posting pictures to the Website.  Indeed, the record in this case contains dozens of emails sent by Defendant to its Examiners urging them to post on-set photos and other celebrity related photos.  *See, e.g.,* Aplee. Br. at FN8, A-221-A276.  As was noted above, it does not matter whether Defendant intended its Examiners to infringe on Plaintiffs' copyrights; all that is required is that Defendant commanded its Examiners to post photographs to the Website.  *See, e.g., Wood; CoStar.*  Because Defendant intended the conduct complained of, it

27

would fall into one of the exceptions recognized by this Court in *Anderson*, even if the Examiners were acting outside the scope of their employment (which they were not).

As to the second issue, the Examiners undeniably purported to act or speak on behalf of Defendant. Indeed, the record is replete with evidence that shows Defendant holds its Examiners out as the voice of Examiner.com. Consequently, even if Defendant maintains that it does not give its Examiners express authority to speak on its behalf, the fact that a visitor to the Website would believe that the Examiners have such authority is enough. See, e.g., *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394 (D.Colo. 2014); Restatement (Third) of Agency, §2.03 ("[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal").

For all these reasons, it is respectfully requested that this Court find that Plaintiffs' agency arguments were not only duly raised and preserved, but that the existence of an agency relationship has a direct bearing on Defendant's ability to avail itself of the safe harbor protections under 17 U.S.C. §512(c).

## CONCLUSION

For all the reasons set forth herein, this Court should reverse the decision of

the District Court.

Dated:          November 16, 2015
                Garden City, New York

                              **SANDERS LAW PLLC**

                              By: /s/ Craig B. Sanders
                              Craig B. Sanders, Esq.
                              Jonathan M. Cader, Esq.
                              100 Garden City Plaza, Ste. 500
                              Garden City, NY 11530
                              Telephone: (516) 203-7600
                              *Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

I hereby certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface (New Times Roman) of 14 points, and contains 6518 words (excluding, as permitted by Fed. R. App. P. 32(a)(7)(B), the corporate disclosure statement, table of contents, table of authorities, and certificate of compliance), as counted by the Microsoft Word program used to produce this brief.

Dated:     Garden City, New York
           November 16, 2015

                          **SANDERS LAW PLLC**

                          By: /s/ Craig B. Sanders
                          Craig B. Sanders, Esq.
                          Jonathan M. Cader, Esq.
                          100 Garden City Plaza, Ste. 500
                          Garden City, NY 11530
                          Telephone: (516) 203-7600

                          *Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

(1) All required privacy redactions have been made pursuant to 10th Cir.R. 25.5;

(2) That the ECF submission is an exact copy of the foregoing;

(3) The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, <u>GFI Cloud Antivirus (VIPRE)</u>, and according to the program are free of viruses.


Dated:        Garden City, New York
              November 16, 2015

                              **SANDERS LAW PLLC**

                              By: <u>/s/ Craig B. Sanders  </u>
                              Craig B. Sanders, Esq.
                              Jonathan M. Cader, Esq.
                              100 Garden City Plaza, Ste. 500
                              Garden City, NY 11530
                              Telephone: (516) 203-7600
                              *Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify the foregoing was served on all parties or their counsel of record and filed with the Court through the CM/ECF system.

Dated:      Garden City, New York
            November 16, 2015

                    **SANDERS LAW PLLC**

                    By: <u>/s/ Craig B. Sanders</u>
                    Craig B. Sanders, Esq.
                    Jonathan M. Cader, Esq.
                    100 Garden City Plaza, Ste. 500
                    Garden City, NY 11530
                    Telephone: (516) 203-7600
                    *Attorneys for Plaintiffs-Appellants*